Percy E. Wagner and Elizabeth Wagner v. Commissioner.
Wagner v. Commissioner
Docket No. 5607.
United States Tax Court
1945 Tax Ct. Memo LEXIS 51; 4 T.C.M. (CCH) 977; T.C.M. (RIA) 45324; October 29, 1945
*51 Thomas C. McConnell, Esq., for the petitioners. Carroll Walker, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $736.73 in the income tax of the petitioners for the calendar year 1941. The only issue for decision is whether or not he erred in disallowing a deduction of $6,085 which the petitioner claimed as a long-term capital loss. Findings of Fact The petitioners, husband and wife, filed a joint income tax return for 1941 with the collector of internal revenue for the first district of Illinois. All reference to the petitioner hereafter will mean the husband. The petitioner owned 88 shares of stock of the Midway State Bank of Chicago, Illinois, in 1941. He had acquired some of the stock when the bank was organized in 1926 and some by subsequent purchases. His last purchase was of 10 shares which he acquired in 1938 or 1939 for $10 a share. The cost of the 88 shares to the petitioner was $12,170. The directors of the bank decided in 1932 to discontinue banking operations because deposits had fallen off from about $1,500,000 to about $250,000, and the bank was not able to make money. The *52 stockholders voted to liquidate the assets, pay off depositors and other creditors, and dissolve the corporation. A loan of about $95,000 was obtained from the RFC in 1932 and all depositors were paid in full shortly thereafter. The bank at that time had book assets of about $511,000, deposits and other indebtedness of about $183,000, and capital and surplus of about $328,000. Most of the assets of the bank were pledged as security for the RFC loan. Liquidators were appointed and they proceeded to liquidate the assets of the bank as rapidly as they could and to pay off the indebtedness of the bank. The record does not show what the assets and liabilities of the bank were at the close of 1940. Those interested in the bank discussed the possibility of reopening it from time to time, but they decided prior to 1941 that the bank would not be reopened. Earl H. Carrothers, a real estate dealer, entered into an agreement in 1941 under which the bank disposed of all of its remaining assets. The amount still due to the RFC at that time was $32,722.06, with interest from March 1, 1941. The agreement provided that a Miller mortgage in the amount of $12,500, on which the bank was mortgagee, *53 should be refinanced by obtaining a loan from the RFC Mortgage Company and the proceeds applied to the reduction of the bank's debt to the RFC. That was done. It was also provided that the bank should transfer an Olson mortgage and the amount thereof should be used to reduce the indebtedness to the RFC. These two credits reduced the amount due to the RFC to about $4,700. Carrothers paid this amount which completely paid off the RFC indebtedness. The bank then transferred all of its remaining assets to Carrothers. These included the banking premises, furniture and fixtures therein, including the vault, and perhaps some remaining notes, securities and other collateral which had been pledged with the RFC. The bank still owed a debt of $40,000, the purchase price which it agreed to pay in 1932 for the banking premises. The vault of the bank was kept open for the benefit of those who had safety deposit boxes therein. Annual revenue of about $8,500 was obtained from this source. The petitioners claimed on their return a long-term capital loss of $6,085 representing one-half of the cost of the bank stock. The Commissioner disallowed this deduction and held that the stock became worthless *54 prior to the taxable year 1941. The stock of the Midway State Bank of Chicago became worthless prior to 1941. Opinion MURDOCK, Judge: The 88 shares of stock of the Midway State Bank owned by the petitioner became worthless while he owned those shares. They cost him $12,170. Thus, he sustained a loss of $12,170 by reason of his investment in that bank stock. He never took a deduction for the loss on any income tax return prior to the return for 1941, but he did claim the loss as a long-term capital loss on his return for the latter year. He contends that he ought not to be denied the benefit of a deduction for the loss which he so clearly sustained and that the Commissioner should not turn him off by simply stating that the loss occurred at some indefinite time but prior to 1941. It is frequently difficult to determine, and sometimes even more difficult to prove, just when stock of a corporation becomes worthless. We recognize the force of the petitioner's argument, but the Commissioner has disargument, but the Commissioner has disallowed the loss and the burden was upon the petitioner to show that the stock became worthless in 1941. It is clear that the stock was worthless *55 in 1941, but the evidence does not show that it had any value at the beginning of 1941 and, therefore, we can not find as a fact that it became worthless during that year. ; ; affirmed , certiorari denied . The petitioner argues that the stock had value as long as there was any prospect of reopening the bank and that prospect continued until the sale in 1941. He argues in this connection that the banking premises had a value of at least $100,000 if used for banking purposes. The evidence shows that the bank was not closed by sovereign authority but its operations were discontinued voluntarily by the stockholders and directors in 1932 because there were insufficient deposits to make the business profitable. There is no evidence to indicate that the prospects of depositors increased as the years went along. The progress of the liquidation over the many years following 1932 is not shown, but the evidence indicates that practically all of the assets had been liquidated prior to 1941 and most of the debts had been paid. *56 Furthermore, one of the petitioner's witnesses, who played a prominent part in the liquidation and who was a stockholder and vice president of the bank, testified that there were many discussions of a plan to reopen the bank, but all thought of reopening was finally given up "along in the late 30's, around, I should say, 1940, along in there." There is no evidence that there were any prospects of reopening the bank at the end of 1940. Thus, the petitioner's argument based upon the plan does not help him. The record would not justify a finding that the banking facilities were worth anything like $100,000 at the beginning of 1941. Early in that year they were sold with all other assets for about $5,000 which apparently was all they were worth. There is no evidence in the case to show what the assets and liabilities of the bank were at the close of 1940 or the beginning of 1941. There were at that time unpaid debts of the bank amounting to at least $72,000. In the absence of evidence to show what the assets were at that time and what their value was we could not hold that the stock still had value at the beginning of 1941. The petitioner has failed to introduce evidence on which we *57 could base any finding to give him the relief which he seeks. Decision will be entered for the respondent.